RENDERED: JULY 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1338-MR

TRACI M. CULL                                          APPELLANT

                APPEAL FROM CAMPBELL CIRCUIT COURT
v.                 HONORABLE DANIEL J. ZALLA, JUDGE
                    ACTION NO. 09-CI-00600

DYCK-O'NEAL, INC.; DEUTSCHE
BANK TRUST COMPANY
AMERICAS, AS TRUSTEE,
RESIDENTIAL FUNDING CO., LLC
FKA RESIDENTIAL FUNDING
CORP., ATTORNEY IN FACT;
DOUGLAS A. CULL; AND
NATIONAL CITY BANK                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, JONES, AND McNEILL, JUDGES.

COMBS, JUDGE: Traci M. Cull appeals an order of the Campbell Circuit Court

that declined to set aside the judgment and order of sale entered in a foreclosure

action against her. It did so on the basis that Cull had been properly served with

process. The circuit court specifically rejected Cull's testimony that she had not been served with a summons and a copy of the complaint in favor of the deputy sheriff's testimony to the contrary and his return of service. After our review, we affirm.

By deed dated September 6, 2006, Traci Cull and her husband, Douglas A. Cull (a home builder), acquired from Douglas Cull & Company, Inc., a residence at 6 Camryn Court in Newport, Kentucky. Essentially refinancing the existing construction loan, the Culls executed a note in the amount of $1,300,000.00, and agreed to make monthly interest-only payments to the lender for 120 months – after which they were to make monthly payments to include both principal and interest.

The note was secured by a mortgage against the Camryn Court home. The mortgage included a borrower occupancy rider. Pursuant to the rider, the Culls agreed that they would occupy the home at 6 Camryn Court as their principal residence. If they failed to do so, the lender retained the right to accelerate the debt and foreclose the mortgage.

When the Culls defaulted on the note by failing to make the monthly interest payments, Deutsche Bank, the holder of the note, accelerated the repayment terms. The bank filed a foreclosure action against the Culls in Campbell Circuit Court on April 20, 2009. Named as defendants were Traci Cull,

Douglas Cull, and National City Bank (an additional mortgagee). For each of the Culls, the complaint identified three separate addresses for service of process. Two of these were addresses in Fort Thomas; the remaining address was the Camryn Court house in Newport.

Civil summonses on the complaint were duly issued by the clerk on April 20, 2009. One summons directed that Traci was to be served by the Kenton County Sheriff; one was to be served by certified mail; and the last one was to be served by special bailiff and indicated that she could be served at 6 Camryn Court in Newport. On May 1, 2009, another summons was issued to be served upon Traci by the Campbell County Sheriff. It was given to Campbell County Sheriff's Deputy Timothy Rechtin for service. It indicated that Traci Cull could be served at 6 Camryn Court.

On May 5, 2009, Deputy Timothy Rechtin filed his proof of service. It indicated that he had served the summons along with a copy of the complaint upon Traci Cull on May 4, 2009. An alias summons was served upon Douglas Cull by Deputy Rechtin on the same date, and proof of service appears of record. On May 15, 2009, Douglas answered the complaint. National City Bank filed its answer on May 18, 2009.

On August 7, 2009, Deutsche Bank filed a motion for default judgment with respect to its claim against Traci Cull and a motion for summary

judgment with respect to its claims against Douglas Cull and National City Bank. Deutsche Bank certified that Traci Cull had been served by the sheriff's department on May 4, 2009; that she had filed nothing in response; and that the balance due from the borrowers totaled $1,347,022.36 as of that date. The circuit court granted the default judgment and the summary judgment. Its final judgment and an order of sale were entered on September 2, 2009, and the matter was referred to the master commissioner for judicial sale.

On April 20, 2010, the master commissioner filed his report of sale. Deutsche Bank was the successful bidder at the sale with an offer of $733,434.00. The court's order confirming the sale was entered on May 20, 2010. Deutsche Bank paid $6,366.95 into court for sale expenses, acquiring a deed to the home at 6 Camryn Court on June 1, 2010.

In 2013, Deutsche Bank assigned its remaining interest in the court's final judgment to Dyck-O'Neal, Inc. By order entered on April 23, 2018, Dyck-O'Neal was substituted as plaintiff in the foreclosure action. In order to address the substantial deficiency remaining with respect to the judgment, Dyck-O'Neal sought to garnish Traci Cull's wages. Notice was forwarded to Deloitte Tax, LLP, where she worked as a certified public accountant.

On December 27, 2018, by limited appearance, Traci Cull filed a motion to void the judgment against her. She contended that she had never been

served with process. Cull contended that because she was never properly before the court, its judgment was ineffective with respect to her interest in the disputed property. Cull attached her affidavit to the motion in which she explained that she had never resided at 6 Camryn Court. Instead, the house had been leased to John and Victoria Grooms, who resided there at the time that the foreclosure action was commenced. Cull swore that she had never been served with process. Despite her husband's participation in the foreclosure litigation, Cull indicated that she had not been aware that a judgment by default had been entered against her until November 2018 when her employer told her about the wage garnishment. Dyck-O'Neal responded and opposed the motion; Deutsche Bank filed a motion to intervene.

Dyck-O'Neal and Deutsche Bank argued that Cull's statements were false. They explained that Cull had made a number of representations to the lender indicating that she resided at 6 Camryn Court; that she would continue to maintain the home as her primary residence; and that the loan was intended to pay for the home. They contended that Cull's flimsy attack on the service of process was insufficient to overcome the presumption that the sheriff department's return of service was valid. In response, Cull indicated that she was entitled to an evidentiary hearing in which she intended to present the testimony of Victoria

Grooms, her tenant at the time the foreclosure action was commenced, and retired Deputy Sheriff Rechtin, who provided the proof of service.

By order entered on February 27, 2019, the Campbell Circuit Court permitted Deutsche Bank to intervene. The circuit court referred the matter to the master commissioner for a hearing and specifically directed him to consider whether Cull had been personally served with process. A period of discovery followed.

On July 18, 2019, the master commissioner conducted an evidentiary hearing on a single issue of fact: whether Traci Cull was served with a summons and a copy of the complaint in Deutsche Bank's foreclosure action by Campbell County Deputy Sheriff Rechtin. One week later, the master commissioner filed his report with the court indicating that Traci Cull had been duly served with process by Rechtin on May 4, 2009. Cull filed timely her exceptions to the commissioner's report. Nevertheless, the report was confirmed by the circuit court on August 15, 2019. Cull's motion to alter, amend, or vacate the order confirming the report was denied, and the court's final judgment was entered on August 23, 2019. This appeal followed.

On appeal, Cull argues that the circuit court erred by confirming the master commissioner's report. Having carefully considered each of her several arguments, we disagree.

Master commissioner reports are governed by the provisions of CR[1] 53.05. Pursuant to the rule, the master commissioner is required to prepare a report of recommendations to the court upon the matters submitted to him by the court's order of referral. CR 53.05(1). The master commissioner is expressly authorized to make findings of fact and conclusions of law. *Id.* The court has a variety of options. It may: adopt the master commissioner's report; modify it; reject it in whole or in part; or elect to receive additional evidence. CR 53.05(2).

To the extent that the court adopts the master commissioner's findings of fact, they are to be considered the findings of the court. CR 52.01. Findings of fact shall not be set aside unless clearly erroneous. *Id.* Findings are clearly erroneous only where they are not supported by substantial evidence. *Ryan v. Collins*, 481 S.W.2d 85 (Ky. 1972). Where the court has adopted the findings of the master commissioner, due regard shall be given to the opportunity of the commissioner to judge the credibility of the witnesses. CR 52.01.

There is no dispute that Rechtin executed and filed his proof of service confirming that he had personally served Traci Cull with a summons and a copy of Deutsche Bank's complaint against her on May 4, 2009. The fact issue concerns whether it was actually Traci Cull who was served.

---

[1] Kentucky Rules of Civil Procedure.

The evidence is conflicting on that point. Cull testified that despite her representations to the lender, she had never lived at the Camryn Court address. She admitted that the house had been utilized as an office for her husband's construction business instead and that she worked in the business part-time as a bookkeeper. Cull explained that the house was eventually leased to John and Victoria Grooms, who were residing there at the time the foreclosure action was commenced. Cull swore that she had never been served with process.

Victoria Grooms confirmed that she had resided at 6 Camryn Court since May 2008. She and her husband rented the property on a month-to-month basis, and it remained on the market throughout their tenancy. Grooms testified that she had no recollection that anyone from the Campbell County Sheriff's Office had ever attempted to serve her with a summons.

Rechtin testified that he began working as a process server for the sheriff's office in 2006. In 2008, he was hired as a Campbell County sheriff's deputy. Rechtin indicated that he was unfamiliar with Traci Cull. He testified that he had served "thousands and thousands of papers" during his tenure and that he could not specifically recall Camryn Court or serving the individual identified as Traci Cull on May 4, 2009. He also candidly admitted that he could not remember what he had for lunch yesterday. Nevertheless, Rechtin was adamant that "[i]f my signature's on it, I served her." He explained that the "only way I would have

-8-

served this is if that person was telling me that's who they were." Rechtin specifically denied that he would have "just given [the summons and a copy of the complaint] to anybody . . . . [T]here's no incentive for us to do that." "I was never under pressure to serve X number of papers, anything like that." Rechtin was asked whether "in the totality of your experience in serving papers . . . have you ever after the fact realized that you were mistaken in making the return on anything ever [?]" He responded, "No, I've never . . . I never, to my knowledge, know that I made any mistakes on returning a paper."

There is a well established presumption that a sheriff's return of service is correct. *See Igo v. Berea Realty & Finance Co.*, 300 Ky. 526, 189 S.W.2d 733 (1945), and the cases cited therein. An officer's proof of service indicating that he served a defendant with process is ordinarily conclusive to show that the summons and a copy of the complaint were duly delivered to her. *Id.* In light of the evidence and the long established presumption in favor of the validity of proof of service by a sheriff's deputy, the court did not err by finding that Cull's unsupported and unequivocal testimony -- albeit ten years after the event at issue -- was insufficient to impeach Rechtin's proof of service.

In the alternative, Cull argues that the service of process was invalid. She bases the argument on the premise that Deputy Rechtin was not truly a deputy sheriff because he admitted in his deposition that he was never sworn in by

Campbell County Sheriff John Dunn, who held office until 2013. KRS[2] 70.030(1) expressly provides that a deputy "shall take the oath required to be taken by the sheriff" before he executes the duties of his office.

Cull contends that Rechtin was acting merely as a process server in 2009 when he allegedly delivered the summons and a copy of the complaint to her. She argues that the presumption that a **sheriff's** return of service is correct does not apply. She notes the requirements of KRS 70.050 pertinent to execution of process by someone other than the sheriff (or his deputy). She contends that Rechtin did not follow those statutory requirements by failing to attach an affidavit to the return and deliver it to the sheriff (or his deputy). Thus, she argues that service of process was fatally defective.

We conclude that Rechtin's delivery of the summons and a copy of the complaint to Cull was sufficient to bring her before the court -- even if the presumption in favor of Rechtin's proof of service is ignored. The testimony was sufficient to support the court's finding that Cull was personally served with process on March 4, 2009.

The purpose of the proof of service is to provide evidence that service has been effected and to put on record the statement of a responsible official that notice has been provided to the defendant that proceedings have been commenced

---

[2] Kentucky Revised Statutes.

against her. *Ryan*, 481 S.W.2d 85. Even if we were to accept that Rechtin's return of service was deficient because it omitted a necessary affidavit, we are not persuaded that the defect invalidated the service of process. Rechtin testified that he served Cull with the summons and a copy of the complaint. The court found this testimony credible. In addition, the provisions of CR 4.16 permit the court in its sound discretion -- *at any time* -- to allow proof of service to be amended to remedy any deficiency. Our review of the totality of the circumstances and pertinent law persuades us to conclude that service of process was valid in this case.

Cull next argues that portions of Rechtin's deposition testimony were improperly admitted into evidence. She contends that Rechtin's inability to recollect any of the specifics concerning his alleged service of process upon her on March 4, 2009, renders the testimony entirely speculative and inadmissible under the provisions of KRE[3] 602.

A master commissioner may rule upon the admissibility of evidence. CR 53.03. The provisions of KRE 602 prohibit a witness from testifying to matters unless evidence is introduced that is sufficient to support a finding that the witness has personal knowledge of the matter. Rechtin freely and candidly acknowledged that he had no specific recollection of serving Cull with a summons

---

[3] Kentucky Rules of Evidence.

-11-

more than a decade before his deposition was taken. The challenged testimony related to the standard procedure that he followed when serving defendants with process. Evidence was introduced that was sufficient to support a finding that he had personal knowledge of this practice of asking for confirmation of an individual's identity before delivering a summons and complaint. The testimony, elicited by Cull's own counsel, was clearly admissible. Moreover, Cull's counsel proffered Rechtin's deposition testimony to the master commissioner during the evidentiary hearing and indicated when asked that he had raised no objections while the testimony was being taken. There was no evidentiary error. Moreover, under the circumstances, Cull cannot now be heard to complain about the testimony.

Finally, Cull argues that the master commissioner's report exceeded the scope of the circuit court's referral. A master commissioner is authorized to make recommendations to the court concerning matters submitted to him through referral by the court. CR 53.05(1). In this matter, the circuit court directed the master commissioner to consider whether Cull had been personally served with process. The evidentiary hearing was confined to this sole issue. The master commissioner's report characterized Cull's testimony concerning the events of a decade earlier as merely self-serving. The report reflected his conclusion that her testimony was insufficient to overcome Rechtin's credible testimony concerning

the standard practices that he scrupulously observed while serving a defendant with process. The report did not contain recommendations beyond the master commissioner's authority, nor did it exceed the scope of his directive to focus on service of process.

We AFFIRM the order of the Campbell Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David A. Kruer
Covington, Kentucky

BRIEF FOR APPELLEES DYCK-O'NEAL, INC.; AND DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE, RESIDENTIAL FUNDING CO., LLC FKA RESIDENTIAL FUNDING CORP., ATTORNEY IN FACT:

Olivia F. Amlung
Covington, Kentucky

Lawrence J. Kemper
Carmel, Indiana

Sarah S. Mattingly
Louisville, Kentucky